963 F.2d 367
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Bijan AHMADI; Mehran Ahmadi, Petitioners,
v.
BOARD OF IMMIGRATION APPEALS, Respondent.
 No. 91-1823.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 6, 1992
Decided: June 1, 1992
 
 On Petition for Review of an Order of the Immigration and Naturalization Service. (A26-975-679, Ane-sgz-roy)
 Argued: Bahman Z. Lotfi, Washington, D.C., for Petitioner.
 Alexander Herman Shapiro, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.
 On Brief: Stuart M. Gerson, Assistant Attorney General, Richard M. Evans, Assistant Director, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.
 
 
 1
 N.D.W.Va.
 
 
 2
 AFFIRMED.
 
 
 3
 Before SPROUSE and NIEMEYER, Circuit Judges, and KIDD, Senior United States District Judge for the Northern District of West Virginia, sitting by designation.
 
 OPINION
 PER CURIAM:
 
 4
 This is a petition for review of a final order of deportation issued by the Board of Immigration Appeals (BIA) on August 26, 1991, denying petitioners' applications for asylum and withholding of deportation, and requests to reopen and remand for consideration of new evidence and for suspension of deportation. Finding that the BIA's decision denying asylum and withholding of deportation was supported by substantial evidence, and that the BIA did not abuse its discretion in denying to reopen and remand, we deny the petition and affirm the decision of the BIA.
 
 I.
 
 5
 Petitioners Bijan Ahmadi and Mehran Ahmadi are Iranian nationals who entered the United States on October 18, 1982 as non-immigrant students authorized to remain until October 29, 1982. On November 20, 1985, having overstayed their visas, the petitioners were served with Orders to Show Cause, charging them with deportability. On April 21, 1986, counsel for the petitioners appeared on behalf of the petitioners before the Immigration Judge (IJ), conceded their deportability, and applied for asylum under § 208(a) of the Immigration and Nationality Act (Act), 8 U.S.C. § 1158(a), and withholding of deportation under § 244 of the Act, 8 U.S.C. § 1253(h). Two subsequent hearings were held, after which, on September 22, 1987, the IJ rendered an oral decision denying the petitioners' applications for asylum and withholding of deportation.
 
 
 6
 At the hearing, the petitioners asserted three grounds in support of their claim that they would be subjected to persecution if deported to Iran. First, the petitioners pointed to the political affiliation of their father, Asghar Ahmadi. Their father had been an agent in the SAVAK, the secret police of the Shah of Iran, prior to the Iranian revolution. Five or six months after the revolution, in 1981, their father lost his job as a teacher and his salary was discontinued. No reasons were given. Also, in October of 1986, having been diagnosed with cancer, their father sought permission to leave Iran in order to seek treatment in the United States. A passport was not granted until he bribed an official. Their mother already had a travel visa and had been residing in the United States for six months.
 
 
 7
 Second, the petitioners testified to their own political activities in Iran when they supported the short-lived moderate presidency of Banisadr, who fell from power in July 1981. The petitioners attended mass demonstrations in support of Banisadr and also helped organize support and protest groups in their high schools. When the petitioners applied to college, after the fall of Banisadr, they were denied admission by the "Islamic committee" of the university. The university authorities investigated their political and religious backgrounds by questioning neighbors. The petitioners testified that they became frightened at this time and started to stay with relatives outside of Tehran. Also, on one or two occasions, people demonstrated outside of their father's home, chanting that their father and Bijan were antigovernment. On April 23, 1982, nine months after the fall of Banisadr, the petitioners obtained forged passports and left Iran, eventually arriving in the United States on October 18, 1982, with student visas. The petitioners also testified that their first cousin was jailed for four years after being arrested at a demonstration; another cousin is still in jail for unspecified reasons; and a class mate was killed at one of the demonstrations. Petitioners stated that they feared persecution if they remained in Iran.
 
 
 8
 Based upon this evidence, the IJ, while believing that the petitioners have a genuine fear of returning to Iran, found that they had failed to show a reasonable fear of persecution, and denied the petitioners' applications for asylum and withholding of deportation. On October 19, 1988, the petitioners filed a timely appeal of the adverse decision by the IJ to the BIA. After filing the appeal to the BIA, but prior to any decision, the petitioners submitted to the BIA a letter dated September 15, 1990, from the petitioners' brother-in-law, who resides in Iran. This letter forms the third area asserted in support of their applications, as well as their motion to the BIA to reopen and remand their case to the IJ based upon new evidence under the BIA's regulations found at 8 C.F.R. § 3.2. The letter states that Majid, who recently was released from prison, stated that the authorities still asked about the petitioners. Further, Majid expressed his opinion that the petitioners were lucky to leave Iran when they did, otherwise they would be in jail or dead.
 
 
 9
 The petitioners also requested the BIA to reopen and remand their case to the IJ to permit application for suspension of deportation, under § 244 of the Act, 8 U.S.C. § 1254. The BIA reviewed the decision of the IJ, as well as the letter submitted afterwards, and held that the petitioners had failed to demonstrate a well-founded fear of persecution necessary to support their applications for asylum and withholding of deportation. The BIA refused the request to reopen and remand, finding that the letter added nothing to their claim for asylum/withholding of deportation and that the petitioners failed to set forth the evidence necessary to be eligible for suspension of deportation.
 
 II.
 
 10
 This Court must affirm the decision of the BIA denying the petitioners' applications for asylum and withholding of deportation if the decision is supported by substantial evidence of record. Tarvand v. U.S. I.N.S., 937 F.2d 973 (4th Cir. 1991). Put another way, the BIA's decision that a person is not eligible for asylum"can be reversed only if the evidence presented by [the applicant] was such that a reasonable fact-finder would have to conclude that the requisite fear of persecution existed." I.N.S. v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992). We review the denial by the BIA to reopen and remand a claim for an abuse of discretion. I.N.S. v. Abudu, 485 U.S. 94, 104-05 (1988); M.A. v. U.S. I.N.S., 899 F.2d 304 (4th Cir. 1990).
 
 III.
 
 11
 In order to establish eligibility for asylum, the petitioners must show "a well-founded fear of persecution on account of ... membership in a particular social group, or political opinion." § 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A). In this regard, the petitioners must point to specific, concrete facts showing that they would be singled out by the government of Iran for persecution on account of their political and religious views. Cruz-Lopez v. I.N.S., 802 F.2d 1518, 1522 (4th Cir. 1986).
 
 
 12
 We have no doubt that the conditions and human rights abuses in Iran are deplorable. The Act, though, "does not provide asylum eligibility for anyone who may be subject to violence in his home country." M.A. v. U.S. I.N.S., supra at 315. The petitioners have failed to point to specific, concrete facts showing that they would be singled out by the government of Iran for persecution on account of their political and religious views. The evidence regarding their father does not suggest that the petitioners face persecution. At most, their father suffered discrimination, as did the petitioners when they were denied admittance to the university. However, this is not evidence of persecution. Furthermore, the petitioners participated in a few demonstrations and engaged in limited organizing activities, but then remained in Iran for eight months with no threats of persecution by the government of Iran. Indeed, their father, who certainly would be a greater threat to the government, being a former member of the Shah's secret police, continued to live in Iran for five years without persecution. He left Iran in 1986, not to escape persecution, but to seek medical treatment. Also, it is unclear why the petitioners' friends were arrested. Finally, the letter by their brother-in-law regarding questions by the government as to the whereabouts of the petitioners, does not convey the reasons for the inquiries by the government, or any inclination to punish the petitioners for their views.
 
 
 13
 The BIA, after thoroughly considering the petitioners' evidence, including the letter submitted after the IJ's hearing, concluded that the petitioners had failed to meet their burden.[1] Reviewing the BIA's decision and the record herein, it is clear to us that the petitioners have failed to "show that the evidence [they] presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." I.N.S. v. Elias-Zacarias, supra at 817.
 
 
 14
 Accordingly, we find: (1) that the BIA did not abuse its discretion by refusing to remand to the IJ for consideration of the new evidence, having thoroughly considered it in the decision; and (2) that the BIA's denial of the petitioners' applications for asylum is supported by substantial evidence. Since the evidentiary standard for asylum is less stringent than that for withholding of deportation, we need not separately review the BIA's denial of the latter, having found substantial evidence to support the denial of the former. Echeverria-Hernandez v. U.S. I.N.S., 923 F.2d 688, 691-692 (9th Cir. 1991). See Tarvand v. U.S. I.N.S., supra at 976.
 
 IV.
 
 15
 Finally, the BIA denied the petitioners' request to reopen and remand for consideration of a suspension of deportation claim due to their failure to establish a prima facie case before the BIA.[2] Under the BIA's regulations, the petitioners must submit "affidavits and other evidentiary materials" supporting their claim. 8 C.F.R. § 3.8. Since only conclusory allegations by their counsel were submitted, the BIA refused the petitioners' motions to reopen and remand. A motion to reopen and remand is "an extraordinary remedy ... designed to allow the [BIA] to suspend final judgment and address the merits of an immigration claim in only the most clearly meritorious cases." M.A. v. U.S. I.N.S., supra at 308. Based upon the record before us, we cannot say that the BIA abused its discretion in denying the petitioners' motion to reopen and remand.
 
 V.
 
 16
 For the foregoing reasons, this petition for review is denied.
 
 
 17
 Accordingly, we affirm the decision of the Board of Immigration Appeals.
 
 AFFIRMED
 
 
 [1]
 Petitioners, in Section II(A) of their brief, claim numerous errors by the IJ in his decision. This is not before us because the BIA's decision supersedes the IJ decision, and is the only decision to be reviewed by us. However, the manner in which the IJ issued his opinion is appalling, especially in light of the substantial rights to which the decision applies. Surely, the BIA would not condone such slipshod work from its decision-makers
 
 
 [2]
 Generally, an alien is eligible for suspension of deportation under § 244(a) of the Act, 8 U.S.C. § 1254(a), if he:
 
 
 [1]
 Resided continuously in the United States for at least 7 years;
 
 
 [2]
 Is and has been a person of good moral character; and
 
 
 [3]
 Deportation would result in extreme hardship to himself or his spouse, parent or child who is a citizen of the United States or an alien lawfully admitted for permanent residence